THE ORGANIZED CHARITIES ASSOCIATION *vs.* BURTON MANSFIELD ET AL., EXECUTORS.

Third Judicial District, Bridgeport, October Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A mere naked power to create or establish a trust, *inter vivos*, in personal estate, for the benefit of a third person, unless exercised prior to the death of the donor, is thereby revoked.

The maker of a note payable on demand to the order of *F*, her business agent and adviser, at the bank of which he was president, delivered the same to him with written authority to invest the "proceeds" in an endowment fund for the benefit of a local charity. The donee of the power placed the papers in his box at the bank where they remained without further action on his part until the death of the maker of the note several days later. In an action by the charity organization to secure the benefit of the gift or trust it was *held:*—

1. That in whatever light the transaction might be regarded, it was left inchoate and incomplete.

2. That the facts stated did not constitute a gift, since there was no intention upon the part of the maker of the note that title to the money which it called for should immediately, or indeed at any time, vest in the plaintiff; nor did they establish any trust which a court of equity could enforce or effectuate, since no specific property was transferred by the owner or her agent for the benefit or use of the plaintiff, nor any declaration made by either that she or he held any specific property for such use; and therefore the subject-matter of the proposed trust never came into existence.

3. That the death of the maker of the note did not give the plaintiff any greater rights against her executors or residuary legatees.

4. That the fact that *F* happened to be one of the eighty directors of the

plaintiff organization was not in itself sufficient, as matter of law, to establish its representation in the transaction, and thus to constitute a delivery of the note to the plaintiff.

5. That *F*'s knowledge of the existence of the note was not notice to the bank, because of the fact that he was its president, the bank being a mere stakeholder whose interests could in nowise be affected by such knowledge.

A power coupled with an interest may survive the death of the donor, but only when coupled with an interest or estate in the thing itself which is the subject of the power.

To constitute a gift *inter vivos* two things are necessary: delivery of possession to the donee, and an intent that with such possession the title shall immediately pass.

Equity favors and will aid gifts made to, and trusts for, charities, but it cannot create them where they do not already exist.

Even in case of a charity equity will not turn an imperfect gift into a declaration of trust, for no better reason than that it is imperfect.

Argued October 26th—decided December 17th, 1909.

ACTION to enforce a claim for $10,000 against the estate of Mrs. Lucy H. Boardman, deceased, brought to the Superior Court in New Haven County and tried to the court, *Reed, J.* Judgment for defendants. *No error.*

The testatrix was a woman of large means. The defendant Fields was, up to her decease, and for fifteen years before had been, her confidential business adviser. He made and changed her investments; drew on her bank account (as did she, also), which was kept at the National Tradesmens Bank in New Haven, of which he was the president; and kept her securities in its vaults, in her box, of which he had the only key. In 1904 she made a will, leaving $10,000 to the plaintiff. On March 22d, 1906, she signed and handed to Mr. Fields her note for $10,000, drawn payable to his order, on demand after date, at the National Tradesmens Bank, for value received; and also a letter of even date addressed to him, reading thus: "I hand you herewith my note for ten thousand dollars ($10,000.) to your order, the proceeds of which can be invested by you for the benefit of the Organized Charities Association of No. 200 Orange Street, New Haven, Conn. This gift is not intended to be

in place of the bequest of ten thousand dollars in my will for general purposes of said Association, but in addition to that bequest my wish being to give by will the ten thousand dollars for general purposes and in addition this sum as an endowment."

He had previously drawn both these papers at her request. In handing them to him she expressed herself as pleased to have made this additional gift. He received them for the purposes set forth in the letter, putting them in his own box in said bank, where they remained until her death, which occurred seven days later. During the same period he had in his possession other notes signed by her, and given to him by her in connection with charitable gifts, the aggregate amount of these being not over $65,000; and also had in his possession and custody cash and personal securities, of which he could have made immediate sale and delivery, without further act on her part, of a value exceeding $125,000. These securities were kept in her box, at said bank.

She also left at her death other property worth nearly $800,000. Fields did not set aside any securities or apply any cash in payment of the note of March 22d. Soon after her death, he gave the note and letter to his coexecutor, with whom they remained until the trial; and also notified the plaintiff of their existence. Previously the plaintiff had no knowledge that there were any such papers, unless it is to be inferred from the fact that Fields was one of its board of about eighty directors, in 1905 and 1906. He never attended any meetings of the board, and performed no duties by virtue of his being a director.

There was no consideration for the note or letter, and the plaintiff in no way changed its position because of them.

The plaintiff exhibited its claim against the estate for $10,000, which was disallowed.

The defendants were sued as executors of Mrs. Boardman's will, and Fields was also sued "both individually

and as trustee of an express trust created and declared by the said Lucy H. Boardman for the benefit of the plaintiff."

The claims were for both equitable and legal relief.

*Henry C. White* and *Leonard M. Daggett*, for the appellant (plaintiff).

*Burton Mansfield* and *James E. Wheeler*, for the appellees (defendants).

BALDWIN, C. J. It is apparent from the letter of March 22d that Mrs. Boardman delivered her note of that date to Mr. Fields with a view of making a gift, by way of endowment, of $10,000 for the use of the plaintiff. She made the note payable to his order, and provided for the investment of its "proceeds" by him for the plaintiff's benefit. He drew up the two papers as her agent, and it is not found that he received them, after they were executed, in any other capacity.

The fact that he was a director of the plaintiff is, standing alone, not sufficient, as matter of law, to establish its representation in this transaction by him, and so a delivery to it. It had not made him its agent for any such purpose, and he did nothing to indicate that he considered such an agency to exist. *Farrel Foundry* v. *Dart*, 26 Conn. 376, 382. His deposit of the papers in his own box at the bank, rather than in Mrs. Boardman's, was not inconsistent with a purpose to keep them within his own control in order to carry out her directions for constituting an endowment fund.

The finding of facts by the Superior Court does not show that the note was of a testamentary character. It states that while Mrs. Boardman was ill at the time in question, she was not so ill as to indicate to Mr. Fields that her death would occur within a short time. Had he, during her life (his authority from her remaining unrevoked), replaced the note by $10,000 in cash or securities, and notified the plain-

tiff of the facts, he would have become its trustee with respect to the fund so coming into existence. But he would have become such by virtue of acts done in the course of a continuing agency for Mrs. Boardman. She had not given him a power coupled with a trust, but only a power to establish a trust. Her death before he had executed this power revoked it.

A power coupled with an interest may survive, but only if coupled with an interest or estate in the thing itself which is the subject of the power. *Mansfield* v. *Mansfield,* 6 Conn. 559. No such interest and no such estate ever became vested in Mr. Fields or in the plaintiff. That his own act might have created the investiture, is immaterial, so long as the act was wanting.

There was no present gift to Mr. Fields, either individually or in trust. The note was indeed in legal effect sufficient authority to the National Tradesmens Bank to pay $10,000 to him or his order out of any funds on deposit with it to the credit of Mrs. Boardman. General Statutes, § 4257. But such a paper, while remaining in the hands of the payee, and never made known to the bank, could constitute no gift. *Thresher* v. *Dyer,* 69 Conn. 404, 411, 37 Atl. 979.

The knowledge of its existence by Mr. Fields was not notice to the bank, because of the fact that he was its president. We have held that the knowledge of the president of a corporation of its ownership of certain property might be imputed to him when acting in another capacity, if otherwise the corporation would be defrauded of its due. *Brown & Bros.* v. *Brown,* 56 Conn. 249, 14 Atl. 718; 58 Conn. 85, 89, 19 Atl. 236. But in the case at bar the bank had no interest in the disposition of Mrs. Boardman's funds in its hands. It was a mere stakeholder. Whether its president did or did not know that a check had been drawn in favor of a particular party, the existence of such a check could neither add to nor subtract from its liabilities. He

was therefore under no duty to communicate his knowledge to the bank. Notice to it under such circumstances is not implied.

It is urged that if the gift were incomplete, it should have been made complete by the exercise of the equitable powers of the court.

To any gift of property *inter vivos* two things are necessary: a delivery of possession to the donee, and an intent that with the possession the title shall immediately pass. *Main's Appeal*, 73 Conn. 638, 640, 48 Atl. 965. It is true that gifts to charities are so highly favored that trusts for such purposes may be established and carried into effect, where, if not of a charitable nature, they could not be supported. *Woodruff* v. *Marsh*, 63 Conn. 125, 38 Amer. State, 346, 26 Atl. 846. But there must be a gift or trust, before questions can arise as to the validity of its provisions. It was certainly not the intention of Mrs. Boardman to make any beneficial gift to Mr. Fields. Whether he acquired the note individually or as her agent, the title to the money which it called for did not then pass to the plaintiff. Future action of some kind was necessary in order to bring the corporation into any legal or equitable relation to Mrs. Boardman or to any one claiming under her.

It was never her intention that it should gain title to the note. It was not to receive a legal title to anything, and its equitable title was to extend only to an endowment fund to be constituted at some future time by means of moneys received from the note.

The facts therefore do not constitute a gift.

Nor was a trust established which a court could enforce or effectuate.

A trust of that nature in personal estate arises, *inter vivos*, only when specific property is transferred by the owner to one who is not to hold it as his agent but receives it for the benefit of another; or when the owner of specific property, without making any transfer, declares that he holds

it for the benefit of another. If Mrs. Boardman can be said to have made any transfer of property, she made it to one who was to deal with it as her agent. But she made no transfer of property, and her agent, Mr. Fields, made none. Nor did she or he make any declaration that any specific property was held by either for the plaintiff's benefit. None was, in fact. She only intended that Mr. Fields should thereafter set apart $10,000 as an endowment for it, and this he never did. The subject of the proposed trust, therefore, did not come into existence. In whatever light the transaction be regarded, she left it incomplete. The plaintiff could not have maintained an action during her lifetime, against either her or Mr. Field, for an account of any property held for its use, or for any other equitable relief. Her death gave it no greater rights against the executors or the legatees under a general residuary bequest for charitable purposes, whose rights they are properly defending. *McNamara* v. *McDonald,* 69 Conn. 484, 61 Amer. State 48, 38 Atl. 54; *Young* v. *Young,* 80 N. Y. 422, 437; *Flanders* v. *Blandy,* 45 Ohio St. 108, 12 N. E. 321; *Milroy* v. *Lord,* 4 De Gex, F. & J. 264.

This is not the case of a settlement resting on a valuable consideration, or one on the faith of which the party claiming to benefit by it has taken action by which he will suffer detriment. Even in case of a charity, an imperfect gift will not be turned into a declaration of trust, for no better reason than that it is imperfect. Courts sometimes relieve against defects in conveyances to charitable purposes where there is simply uncertainty as to who are meant to be the trustees or the *cestuis que trustent.* They do not supply conveyances, where there are none. 2 Perry on Trusts (5th Ed.) § 739; 3 Pomeroy on Eq. Jurisp. § 997.

The Superior Court was asked for the benefit of one charity, in favor of which Mrs. Boardman had contemplated the future establishment of a trust, to take from another charity what she had effectually and immediately be-

queathed to it. Were the equities no more than equal, the legal title would prevail. But the residuary legatees have a superior equity, because their claim is under a present and perfect gift, while the plaintiff's is inchoate and, unless it can be helped out by judicial action, ineffectual.

There is no error.

In this opinion the other judges concurred.